456 P.2d 775

**R. D. ELDRED, Jr., Plaintiff-Appellant,**

**v.**

**C. L. FOLKMAN COMPANY, Inc., an Idaho Corporation, Defendant-Respondent.**

**No. 10211.**

Supreme Court of Idaho.

June 30, 1969.

Young & George, Rigby, for appellant.

Reed J. Bowen, Idaho Falls, for appellee.

McQUADE, Justice.

R. D. Eldred, Jr., (Eldred) is a Nebraska construction contractor specializing in the construction of grain storage and handling facilities. C. L. Folkman Company (Folkman) is a grain company based in Terreton, Idaho. On May 15, 1963, these two parties entered into a contract for the purposes of constructing certain grain storage and handling facilities on the Folkman property. This dispute involves only one structure called the grain receiving house.

Pertinent provisions of the contract are as follows. By paragraph VII, Folkman agreed to pay a total price of $53,220 according to a schedule of payments. All payments except the last one of $8,320 were in fact made. Paragraph II provided that:

> "The contractor agrees that the work under this Contract shall be commenced immediately upon the execution of this agreement, and shall be completed within *See Item XI in specification pages.* days thereafter, and in the event of its failure to so complete the same so that the same shall not be ready for occupancy by said date, it will remit to the owner the reasonable rental value thereof during all of the time thereafter required to complete the same * * *."

Paragraph XII provided that "[t]ime is of the essence of this Contract as to both parties hereto." Paragraph XI of the specifications provided:

> "That the receiving house shall be completed within 45 working days after receipt of building materials from Behlen Mfg. Co. Their schedule of production indicates that this structure should clear their plant in 3½ weeks."

This contract was drafted by Folkman's attorneys but the specification made part of the contract for purposes of establishing a completion date was originally composed and submitted to Folkman by Eldred himself.

The evidence then shows that Eldred failed to perform as the contract required. Eldred did not begin work immediately but rather delayed submission of shop drawings to Behlen Mfg. Co. for metal prefabrication purposes for three weeks. This caused an extra five weeks delay in the receipt of materials. Eldred did not arrive at the construction site until August 10, 1963, and all of the materials did not arrive there until about September 1, 1963. Eldred had various labor problems during construction. As a result, the receiving house was not completed until about December 20, 1963.

Because of the delay and certain defects said to exist in the building, Folkman refuesd to make the last payment. Eldred brought suit for the last installment of $8,320. Folkman counterclaimed for damages under the liquidated damages provision of the contract, for wages due Leon Folkman for construction work, for rental for the use of a Folkman tractor, and for damages caused by defects in construction as well as for other asserted consequential damages.

After trial to the court without a jury, the district court entered judgment for Eldred in the amount of the last payment due, of $8,320, and for Folkman by way of set-off in the following amounts.

> (1) liquidated damages under the contract of 1 cent per month per bushel of grain rental (testified to as reasonable by "expert" witness at Tr. 84) times 39,000 bushels (the capacity of the receiving house) times 5 months (the amount of delay figured from July 20 to December 20) ................ $1,950.00
>
> (2) wages due Leon Folkman (750 hours times $2.00 per hour .... 1,500.00
>
> $3,450.00

The court found that Folkman got what it bargained for in the way of storage capacity because the contract was a merger of all negotiations and made no mention of specific storage capacity. The court also found that various other damage claims by Folkman were not supported by the evi-

dence. However, because the court was uncertain whether one of various defects in the building was repairable, it ordered that Eldred follow a procedure to repair the defects within a reasonable time and that Folkman retain an additional $3,000 of the last payment until they were completed. The court also construed paragraph XI of the contract as preventing the award of attorney fees to either party because neither party was completely "successful" in its legal action. Plaintiff Eldred has appealed.

Appellant Eldred makes four assignments of error. First, Eldred argues that the court below erred in allowing respondent Folkman conditionally to retain $3,000 of the last payment due. Since the construction contract was substantially performed, Eldred contends, the court should have simply deducted from Eldred's recovery the cost of repairing any defects shown to exist in the structure. Eldred, the most knowledgeable witness on these matters, gave rebuttal testimony to the effect that certain bulging in three of the corrugated metal panels of the grain receiving house could be remedied for approximately $250, that a certain space near the roof of the structure could be sealed for approximately $75, and that a defective door could be repaired for about $25. This testimony as to the cost of necessary repairs was not impeached.

The district court found that "[m]ost of the defects can be remedied by the expense of a little expert time and money." However, the court made no finding as to whether or not certain leakage between the grain bins which had caused some mixing of separate types of grain was repairable. It is also unclear whether the court actually found that this particular defect in fact had caused $3,000 worth of damage to Folkman, since the court's finding states only that "[Folkman] *has claimed* as a loss on ac-

count of this particular defect the sum of $3,000." (Emphasis added). In its conclusions of law, the court indicated that it was "at somewhat of a loss to determine just what to do about the defects in this building." Therefore the court in effect retained jurisdiction of the issue by devising a rather complex procedure for completing the possible repair of the bin leakage along with the other defects.

■ The general rule on this matter is that a contractor is entitled to recover the contract price of a structure which substantially conforms to the terms of the contract, less the cost of repairing minor defects in the structure.[1] Of course, the difficulty arises in the application of this principle, for the question whether or not the contractor's performance is "substantial" and the structure's deficiencies are "minor" is one of degree, turning upon circumstances such as the particular structure involved, its intended purposes, and the nature and relative expense of the repairs, as well as equitable considerations.

As we read the court's findings of fact, all of the defects in the grain receiving house were found to be quite minor and repairable with the exception the inter-bin leakage, which apparently was related to the certain bulging panels, and as to this latter defect, the court made no finding one way or the other on repairability. It it clear from the record, however, that Folkman received substantially that for which it contracted. Keith L. Folkman, president of C. L. Folkman Grain Company, testified on cross-examination that the first mixing of grain occurred as a result of the shearing off of two bolts, which were subsequently repaired. C. L. Folkman testified on cross-examination as follows:

"Q. [by appellant Eldred's counsel] You admit that you have got a good working elevator [i. e., receiving house]?

1. Nelson v. Hazel, 91 Idaho 850, 852, 433 P.2d 120, 122 (1967); Nelson v. Hazel, 89 Idaho 480, 488, 406 P.2d 138, 143–144 (1965); Mackey v. Eva, 80 Idaho 260, 266, 328 P.2d 66, 70 (1958); Martin v. Karsh, 142 Cal.App.2d 468, 470, 298 P.2d 635, 637 (1956); Forrester v. Craddock, 51 Wash.2d 315, 317 P.2d 1077 (1957); Antonoff v. Basso, 347 Mich. 18, 28–32, 78 N.W.2d 604, 610–612 (1956).

"A. [by Mr. Folkman] Yes. It works for what we built it for."

In relation to the structure in general and the bulging panels in particular, Keith Folkman also testified on direct examination as follows:

"Q. [by respondent Folkman's counsel] * * * is it your contention that there is some basic improper design in this facility?

"A. [by Mr. Folkman] I don't know just exactly how to answer that question. * * * I think that probably it can be repaired. I don't know just what is required. * * *"

Appellant's rebuttal testimony showed that the necessary repairs would cost a minimal amount: $350 as compared to a total contract price of $53,220. The testimony of the Folkmans and their use of the structure for the past six years for its intended purpose, i. e., not the storage of grain but the separation of grain before it is put into storage elsewhere, show that the defects are only minor ones. Moreover, appellant Eldred offered to repair the defects, but Folkman refused to allow him to do so.

■ Therefore under the substantial performance test set forth above, appellant Eldred was entitled to recover the last payment due on the contract, less the cost of repairing these defects.[2] To the extent that this conclusion is inconsistent with the district court's finding of fact no. 21 that "[t]he building as completed does not fulfill the purpose for which it was * * * intended * * *," we find that finding erroneous under Idaho R.Civ.P. 52(a). Thus, on this issue respondent Folkman was entitled to an offset of $350.

■ Appellant Eldred's second assignment of error is that the court erred in awarding Folkman an off-set of $1,950 as liquidated damages under the contract. The contract terms indicate that Eldred

promised to have the materials available in three and one-half weeks after May 15, 1963. Thus, the materials should have arrived about June 15, 1963. Forty-five "working days" after that date would put the completion date at about August 20, 1963, figured at a rate of five to six working days per calendar week. Even if the time allowed for completion is computed at seven working days per week, Eldred need not have completed the structure until approximately six and one-half weeks after June 15, 1963, or the beginning of August, 1963. Thus, the court's finding of fact no. 8 that, under the contract terms, the building should have been completed "by the middle of July" is clearly erroneous under Idaho R.Civ.P. 52(a). The liquidated damages for delay in the completion of the structure should have been computed not from July 20, 1963, but from August 20, 1963, to December 20, 1963. Thus, on this issue, Folkman's off-set for liquidated damages must be reduced by one month's reasonable rental value of the structure.

■ Eldred's third assignment of error is that the court erred in awarding Folkman an off-set of $1,500 as wages due Leon Folkman in connection with the project. Neither party presented records of the hours worked, but Eldred estimated 300 hours, while Folkman estimated 750 hours. The court found that Leon Folkman worked 750 hours at $2.00 per hour. A review of the record indicates that this finding is not erroneous.

■ Finally, Eldred argues that the court erred in failing to award attorney fees under the contract, which provided for such an award to "the successful party" in any litigation. As neither party was completely successful in its legal action, the court construed the contractual provision as inapplicable. We agree.[3]

---

2. This actually was the district court's conclusion of law no. 5.

3. The case of Rinker v. Lauer, 13 Idaho 163, 88 P. 1057 (1907), and the Annotation, Provision for Attorney's Fees, 41

A.L.R.2d 677 (1955) cited by appellant deal with such provisions contained in bills, notes and other evidences of indebtedness, and are not persuasive for the case at bar.

The district court will modify the judgment as follows: Eldred is entitled to the last payment of $8,320, less liquidated damages of $1,560, the cost of repairs of $350, and wages due Leon Folkman of $1,500. The district court's order retaining jurisdiction is vacated. Failure of the trial court to include $400 tractor rental for respondent in the judgment after making a finding of fact in that regard is a clerical error and should be corrected on remand. The judgment modified shall award Eldred a total of $4,910. Costs to appellant.

McFADDEN, C. J., and DONALDSON, SHEPARD, and SPEAR, JJ., concur.